Good morning. Would the clerk call the first case, please? 16-3364, Robert Stein et al. v. Hhgregg Incorporated et al. Arguments not to exceed 15 minutes per side. Mr. O'Hara for the account. Good morning, Your Honors. May it please the Court, Counsel. Your Honors, we're asking you this morning to reverse the decision of the District Court, which dismissed an FLSA collective action filed by the plaintiffs in this case, challenging a draw system employed by H.H. Gregg, which was used by H.H. Gregg to meet its minimum wage obligations. The critical issue before this Court, I think, can be fairly framed this way. May an employer, in this case a retail sales employer, meet its minimum wage obligation by lending money to the employee and then having the employee pay back that money in the next paycheck where their commissions exceed the minimum wage. Our complaint is very specific, that H.H. Gregg used the compensation plan that provided draws only in weeks where the commissions fell below minimum wage. It could be nothing earned on commissions or it could be a modest amount that had to be supplemented by the draw. The draw then creates a debt to the employee in favor of the company. Okay. Well, how is this different from the compensation schemes that were laid out in the regulation? Well, the compensation schemes that are mentioned in the interpretive guides, those aren't published regulations, those are interpretive guides. None of those include a system, none of those include an example of a system that's employed by H.H. Gregg. They're all compensation systems where there are essentially commission that are advanced to employees. In other words, an employer will sort of estimate the number of commissions or the amount of sales an employee is supposed to have over a quarter or a month or a year and then use some division of that as a draw. Okay. That's not what happened here. Would it be legal for them to say your salary is equal to the minimum wage plus on an ongoing accounting basis whatever you have earned during a period that exceeds the minimum wage for that period? Yes, as long as they don't recover the minimum wage part of it. I can't hear you. As long as they don't recover the minimum wage. As long as the employer does not try to recover the minimum wage part of that compensation. Okay. But let's say they say, okay, it's the first of the year, you're going to be paid the minimum wage every week and it's up to you how you want to collect that extra over the minimum wage at the end of the year, for instance. I mean, how is that different except that they're doing a running accounting? I mean, there's never a week when they get, let's make sure I understand it, there's never a week when they get less than the minimum wage. In our view, there is. In the weeks where they're lent money to cover the minimum wage, it's a debt. It's not a wage. And the reason we say that, Judge. But it is free and clear because the only way it's not free and clear is the extent to which the company, when someone leaves or is fired, that they pull that back. That part I would understand to be a problem, but I didn't understand that that happened here. If on a weekly basis all you're doing is reconciling advances to make sure the pay is evened out, that you're getting your minimum wage throughout, I don't, I have no idea what you're, it's just word play. It would be a problem if at the time you leave, the company said, now wait a second here. You still owe us $500. Now give us the 500. That part I could see being a problem, but as I understand it, that did not happen here. Well, we allege that it does happen here. But no, it's the named plaintiffs. We allege that as to all the plaintiffs, one of the named plaintiffs. Answer the question. As to the named plaintiffs, my understanding is that did not happen. As to Mr. Beck, he left, as I understand it. I know he left, but I didn't think that the company said give us $500. Or did he leave in debt? First of all, when he left, was his account negative? He left owing a draw. Okay. Did the company make him pay it? The company did not make him pay it. Okay, so then we have a hypothetical problem. No, it is, first of all, it is their policy, as we allege in the complaint. It is their policy to collect those once they leave. It's also their policy. Let me, so we'll hear from them on this point, but let me just ask you this. Let's just say they take the view today or going forward that we're not going to claw back advances when someone leaves the company. Let's just say that's their view. So we've taken that off the table. I'm a Judge White. I can't understand how anybody's hurt. In fact, I don't understand how you think H.H. Gregg will ever get anybody to work for them. If you can't advance the money regularly to even out the swings of commissions. I mean, that's one of the problems with commission-based salaries. You have great months and you have terrible months, and this is the way law firms work. Draws allow you to even it out, and it's incredibly sensible, and that's why the regs allow it. So I'm a Judge White. I have no idea how anyone's hurt except with the hypothetical of when someone leaves if they claw it back. Well, let me say I think that the fact that they threatened to claw it back is significant. I mean, I have trouble with the notion that it's a problem if you're not creating a debt, but that's why I'm interested to know whether did you allege that as to the named plaintiffs, they left in debt or one of them? One of the named plaintiffs, Mr. Stein, was with the company when the complaint was filed. Can you keep your voice up? Excuse me. One of the named plaintiffs, Mr. Stein, was with the company when the complaint was filed. Mr. Beck intervened later. We filed an amendment complaint for him. He had just left the company. At that time, there had been no effort that I know of specifically by the company to collect the debt that he left with when he had an accident. But he did leave with a negative balance. Yes, and we allege in the complaint that it is their policy, because it's stated specifically in the policy, that they collect those debts. They didn't collect it as to either of the named plaintiffs. Am I right? I just want to know that. You are right, Judge, but they can collect it. I totally get the distinction. Is this a motion to dismiss names? This is a motion. Is that what it is, or is it a summary judgment? No, but it's a motion to dismiss. And so the question is whether the allegations in the complaint are fairly read to allow reasonable expectation that discovery will produce evidence that will meet the elements of an FLSA claim. And the claim about the overtime was a little bit different, right? That there's an allegation? Right, and what happens here is because not only is a debt created, but a threat of discipline against the employee is also incorporated. Let's talk about the threat of discipline. If you're commissioned, this whole process is a measure of production, right? I mean, in the sense that it's not necessarily that you're being fired for or you're being disciplined for being in the hole. The point is that if you're in the hole, necessarily you haven't been selling up to the expectations. For a given week. And to get back to Judge Sutton's question, the difference between the commission plan used here where you have draws only in weeks when they're under minimum wage, it's different from the typical commission system where the employer attempts to set sales goals that you, Judge White, are referring to. Sets sales goals over a period of time, a month, a quarter, a year, and then divides that expectation of sales into individual draws that are tied to expected commissions. These are not, these are purely minimum wage draws. They are not estimated. Why does it make a difference? I don't understand. Because, largely because the act itself, 206. You want minimum wage, right? I mean, you want that. You want minimum wage that's paid to them finally and unconditionally. How can you call a debt that's paid to an employee, I mean, a debt that the employee incurs a wage that is paid to him finally and unconditionally? You would consider, well, forget what happens when someone leaves the company. You think it's wrong. In week one, the commissions are $200. Minimum wage would be $400 that week. They advance the $200, we'll call it, so they get to $400. Then in week two, they have $600 in commissions, and they don't get to keep the extra $200. That would be an example of something you think is wrong and unfair, and I just find that crazy. I can't believe that that's wrong. What does it violate? It violates the hypo of Judge Sutton. It violates 29 CFR 531.35, which says wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or free and clear. The wage requirements of the act will not be met where the employee kicks back directly or indirectly to the employer or to another person for the employer's benefit, whole or part of the wage delivered to the employee. So hypothetically, if the company had said, we are going to pay a draw of $200 a week to every employee, and each week it will be subtracted from any commissions that they earn that week. So if they earn $600 of commissions, subtract the $200, and they get to keep $400 plus the $200 draw, would that simple system be in compliance with the regulation? As long as they keep the draw, as long as they keep that draw. But when the draw is used only, it's only, this is not fixed and periodic. And if you go to the interpretive guidelines, you'll see that the commission plans, they talk. Just to follow up on Judge Moore's hypothetical, what happens with the problem, let's just say minimum wage requires $400 a week. So if I'm understanding Judge Moore's hypothetical, you'd have $200 is guaranteed, and if you have $600 in commission, you subtract the $200, so you get the $400, right? But what do you do in a week where you don't have enough to get to $400? What does everybody do then? Then they pay a minimum wage, period. And they don't get to recoup it on future commissions. That's correct. That's correct. But you've transformed it into a salary plus commission. That's a salary plus commission approach. That is their choice. I thought the regs contemplate a draw system. I mean, if they don't, they don't. They do. But look at the interpretive guides, Your Honor. Those interpretive guides talk about draws that are paid at fixed intervals, fixed amounts. That's not what H.H. Gregg has done here. You're getting minimum, okay. They set the draw at minimum wage. The draw is only paid in weeks where commissions are below minimum wage. So there's no fixed period draw. Draws can come once a month. They can come once in six months. What do you mean by draws can only come? I don't know what you're saying. The draws are only paid in weeks where the commission earned by the employee is below minimum wage. So if the employee makes no sales in the course of a week, then they pay him roughly, let's use $400 as minimum wage. They pay him $400 for week one to use that as their minimum wage obligation. Unfortunately, what they do is they lend that money to the employee. And 29 CFR 531.35 specifically prohibits them from doing that. But it's only a loan if they claw it back, and that's only a departure point. It could be a loan that's forgiven, right? I'm sorry? It could be a loan that is forgiven. It has to be under 531.35. It cannot be recovered. It cannot be money that the employee is expected to repay. Is this a matter of semantics? Because I'm starting to understand what you're saying. You're saying that these are not draws, that the compensation system does not include periodic draws. The compensation system is that you get your commission, and that's it, unless your commission is less than minimum wage. In which case, for that week, you'll get a draw that will bring your commission, whatever that is, up to minimum wage. That's right. Only in the weeks where commission falls below minimum wage. Then the employee is required to give that money back at the next paycheck to the employer. So what if you rephrase it so that you can't say that that's the case semantically? Would that make a difference? Well, I don't think it's paying minimum wage in a week where they don't meet the 207I exemption. They're trying to meet their minimum wage obligation by lending money to the employee. I don't think it's a draw system. It's not a loan, but you can call it an advance. I mean, this is why it's wordplay. Advances are okay. They are not when they're designed to cover minimum wage obligations because of 531.35, Your Honor. And Judge Sutton, I invite you to look at the interpretive guides in section 779.413A5 and 779.416A, and you'll see a description of how those commission plans are normally structured. They are periodic, fixed periods. Just to make sure I know what you're talking about, I thought the agency's interpretations of the regs were very hurtful to you. The opinion letters. I know. I agree. And would you say you lose under those? I would say if you apply the opinion letters, especially the 1980s. Don't the opinion letters get our seminal rock deference? It does not get deference. It gets no deference. In fact, if anything, Your Honor. Do you know what I'm referring to when I say seminal rock deference? The idea that an agency's interpretation of its own regs get almost complete deference. Well, no, it doesn't get. Chevron deference is complete deference where? I'm not talking about Chevron. I know you're not. You're talking about deference to an interpretation applied by the administrator of an agency. To its own regs. To its own regs. Those, you only get to that, Judge Sutton, if two things happen. One, the statute itself is ambiguous, and we're saying 206A is not ambiguous. You're saying the regs have a problem? The regs fail Chevron because they are not reasonable interpretations of the underlying statute? No. I'm saying apply Chevron deference to 29 CFR 535.31. Not to the interpretive guides, which are not published regulations. They're not subject to the notice and comment period that 531. You're just disagreeing with the validity of our and seminal rock, which some people are doing these days. Well, to the extent that you give deference where a regulation, a published regulation, is actually not ambiguous, and 531.35 is not ambiguous, it prohibits employers from requiring employees to pay back any money that they are paid in wages. Go ahead. I've run way over your time, and we need to move on. Thank you very much. Good morning, Your Honors. May it please the Court. I want to start with answering some of the questions that were raised during my colleague's argument. The question of is the debt ever collected? No. I don't think that's important. What does it say? What does the policy say? The policy doesn't say we're going to collect the debt. The policy says you remain liable. Are we talking about on termination when someone leaves? Yes. So the company has a policy that says when someone leaves, even though you've advanced them $500, which has not been reconciled, the company does not seek that money back. There's nothing in the policy that indicates that the company will collect that money, and the company never has collected that money. But there's an allegation in the complaint, paragraph 23, on termination for any reason defendants continue to hold plaintiffs and similarly situated employees liable for any unpaid draw amount. And this is a 12B6 case? Yes, Your Honor, it is. But that allegation is simply a conclusory statement. There's no allegation that the company has ever held anybody actually liable. There's no allegation that the company held Mr. Beck liable or tried to pursue the debt in any way. You're saying they have to have a person for whom this was actually applied in order to challenge a policy if a policy exists? Well, they have to have suffered an actual injury in order to bring the complaint, and they've not suffered such an injury. What if somebody works there and they've gotten themselves in the hole for, let's say, $2,000, and they're filling out a mortgage application, and they're asked if they have any debts. And they're going to be entirely truthful. They're listing a credit card for $800, and then, I mean, what do they do with this? They're $2,000 in the hole. We've never had an inquiry for that kind of situation. We've never had people listing this as a liability, as, quote, a debt. The policy doesn't make reference to it as a debt. It simply says that the liability remains. The liability remains what? It's an open account, if you will. But there's no actions that's ever been taken to actually collect on that. Then put it in the policy. Then say that this is something that on the day you leave, if you were in the hole, then it's the end of the account. The debt is forgiven. Well, even if you don't want to call it a debt. It's hard to change a policy that is what it is, but can you say on behalf of the company in open court that on behalf of the company, they're not going to collect that? Yes, Your Honor, and in point of fact, that For anybody, not just these plaintiffs? Correct, correct. All right. They never have. That's all you can do today. There is nothing in the record in this complaint to suggest that actually the company has ever tried to collect. The plaintiff, Beck, who had left the company But to be clear, I'm asking you on behalf of the company to say they're not going to, in the future, ever collect one of these debts, quote, debts, when someone leaves. Yes, absolutely, Your Honor, and in fact, that language, the two words that we're talking about, are no longer in the policy. Is there a written policy and is it in front of us? Well, it is in a sense that when this case was argued before the court below, it was the motion to dismiss and there was also pending a motion for conditional certification. And the plaintiffs had supplied to the court, in connection with their motion for conditional certification, a copy of the policy. So the court below had the policy itself before it. When it was deciding these motions, they were all being argued and decided. I don't think we have it. I'm not certain of that, Your Honor, whether it's for you or not for you. That would have been up to the plaintiffs, the appellants, to include. Are you saying it was in the record at the district court? Well, it was in the record before the district court in terms of the motion for conditional certification. And, of course, the complaint talks about the policy. So to the extent that the court considered the actual wording of the policy in making its decision, I don't think it went beyond the pleadings, technically, because the pleadings did talk about the policy and then the policy was... But I take it you wouldn't mind if we had the policy? We can ask... No, Your Honor, absolutely not. There's no objection. I mean, we don't think that the policy and that that language in the policy makes any difference at all. So there is language in the policy? There's language in the policy that says that employees who have been advanced, have been given a draw, advanced their commissions in the form of a draw, and that haven't earned commissions sufficient to cover that, remain liable for the amount of the unrecovered advance, essentially. Now, I'm paraphrasing. I don't know that that's the exact language because I don't memorize it. Is that the language you said is, it was in but is not in now? Correct, Your Honor. It was in at the time of the complaint, but it's not in? Correct. You have represented the company. It's not going to enforce it. Yes, and the company never had enforced it. And again, Plaintiff Beck had left the company at that point. At the point where the complaint was filed, he'd already gone. And he never claimed, never alleged in the complaint that he had been somehow subjected to actual liability in order to recover any amount that might have been owed by him. I don't even know that he alleged that he owed anything. It just wasn't an injury. It was an injury in fact that had been alleged. This was dismissed on the pleadings. Yes. That's what it is. You're saying, well, we don't follow it. Well, normally there'd be question of fact about whether you follow it or not. But additionally, they also claim that the policy is to encourage them to not record overtime to get out of the hole. So that they're working harder to make the commission so that they get out of the hole. But if they report their real hours, then they're going to be further in the hole because the draw is bigger. And so they're encouraged not to put in as many, not to write down as many hours and just work on the commission on their own time. Why isn't that a question of fact? Well, it's not. What they fail to allege is a violation of the law though. I thought they said this violated the overtime provisions. But Your Honor, it doesn't violate the overtime provisions. The complaint nowhere alleges that the plaintiffs failed to report their actual hours. And in that same week, failed to earn sufficient commissions to cover whatever hours they had worked. Those two allegations, those two situations are never married up. So while there's allegations about, conclusory allegations about what supposedly happened, they never come to the point where they allege, and this happened to me where I was not paid minimum wage in a week, or I was not paid overtime in a week because I had failed to report some measure of hours. The only thing that they do allege is that when they're attending meetings, for instance, where they can't earn a commission, that in that circumstance they're being denied or that's a violation of the law. But in fact, that's not the case. Because case law makes very clear that whether you're in a situation where you actually can earn the commission or you're actually involved in your selling activities makes no difference. As long as the commission overall, the compensation is sufficient to meet minimum wage and or overtime obligations. Yes, but counting those hours. So if you're being told don't count these hours, these meeting hours, because you won't cover, your commission won't cover your draw if you put in those meeting hours, then that's not following the law. But that's not what the complaint alleges. The complaint doesn't allege that in a particular week or in any week I didn't report all of my hours and in that week I didn't make enough commissions. I was in draw. It never connects. It never marries those two things. So what we have here is purely speculative allegations about what might have been or what might occur, but there's no allegation that it ever did occur to these particular plaintiffs. And that's the whole point of the Iqbal Twanley cases, is that you can't just rely on speculation or conclusory allegations. You actually have to have core facts that demonstrate that a violation of the law may have occurred. And that's what's missing here. I don't recall, Your Honor. I simply don't recall that's not come up. Another point. In terms of the interpretive guidance where you have letters by the agency interpreting its own regs, what parts of the allegation are covered by those and answered directly by them and what aren't? I think what's directly covered by the interpretive guidance, and more specifically the Department of Labor's opinion letters, is this whole argument about free and clear, which is the very crux of the plaintiff's claims. I mean, what plaintiffs are complaining about is not that they're ---- Do opinion letters opine on what happens when you leave on free and clear? Do they say this only works if you don't claw back when someone leaves, or are they silent on what happens when someone leaves? No. The opinion letters do. I believe the 1981 opinion letter made reference to the fact that employees weren't held liable upon departure. The employees were not held liable upon departure. Meaning that's what an employer had to do to truly make it free and clear. Well, if you recovered, if you actually recovered some amount of that unearned draw, if you will, of the advance, then in whatever week that advance applied to, and there was nothing to collect it from, then you are taking back money. But if you never take that step, what you're dealing with is you're never in the free and clear regulation. I mean, the problem with the whole argument about free and clear is that the language that that pertains to appears in 531.35, but that's only talking about what happens within a particular work week. And here, there's no allegation that in any particular work week, the company's giving with one hand and taking back with the other. That doesn't happen. Employees take at least the minimum wage home with them every week, which is what free and clear stands for in 531.35. It seems so complicated. Why doesn't the company just have a policy, we'll pay the minimum wage to everyone, and they get commissions over and above what the minimum wage is if they actually have sold more product in that week, and just leave it at that? Well, that's essentially what the policy provides. No, you'd have to do that. Even if they didn't sell, under my simple situation, if suppose they had a very bad week or they were sick, they would still get the minimum wage. Well, in that circumstance, what the court is describing is not a 100% commission-based policy, but rather it's a salary, as Judge Sutton earlier mentioned, plus commissions, which is a different alternate kind of compensation plan. If you wanted to have a commission-only system, could you literally have a commission-only system and forget about draws and still be in compliance with the Fair Labor Standards Act? I don't think so. If you spread it out in a given week, you don't give them the 400. Exactly. They work 40 hours and they don't get the 400. But if you spread it out, if you said this is commission-only, we are going to spread your, but we spread it out over a six-month period, say, or a year period. So you're going to get a, we're going to give you a draw that happens to equal the minimum wage every week, and at the end of a month or at the end of six, I mean, you'd want to spread it out. At the end of six months or a year, we're going to look at all of your commissions and look at all of your draws, and we're going to give you the difference. And that's basically what you do, but you don't put an end point on it. In other words, under that system, if all you earn is, you take all of those draws and you compare it to all of the commission, and if there's anything extra, you pay it. And that's what the regs sort of contemplate. And that's kind of what you're doing. The only difference is you don't pick a point and tally everything up. The points, the tallies are done continuously. So they're done essentially each week, that tally is made. And the point here is that the regs that deal with commission plans actually do contemplate a recovery of whatever, if there's a difference between the amount of the draw and the amount of the commission. I don't see that. I saw the word supplement. Which reg would you point us to? 779.416A makes specific reference to a recovery of a draw, which is in excess of actual commissions. Okay, wait, which one is this? 416A, Your Honor. 779.416A. I know your red light is on. If you want to conclude, that would be fine. Yes, Your Honor. And the only other point I would make is that the pertinent regulation that juxtaposes to 531.35, upon which plaintiffs base their whole claim, is the real regulation that should be looked at is 531.36 and 531.37, because that deals specifically with the situation that's at issue here, where there's a deduction from excess earnings that occur in subsequent weeks. And what's allowed in 531.36 and 531.37 are the exact same deductions in excess earnings weeks that 531.35 precludes in the minimum wage week. Thank you, Your Honor. Thank you. Thank you. As counsel indicated to the court, the plan itself, the commission plan, was filed with the court in conjunction with the motion for conditional certification. It can be found at page ID 315. And I can read it to the court. It says, to the extent the sales associate total draws exceed the sales associate's total amount of earned commissions, quote, the deficit, the sales associate is liable to and obligated to pay. What do we do with two realities? One, that you haven't made an allegation that that has been enforced as to the plaintiffs here, number one. And number two, your friend on the other side just acknowledged in open court that it will not be enforced, period. So I'm just, you can argue with me, but just what do we do with that? Do you want us to say, well, that's just, who knows? It's not an issue about whether now they're going to tell the court, when the court obviously is concerned about collecting debts, that they aren't going to collect it. In fact, in our case, if. Just so you know, I mean, they just said it in open court. It could go in an opinion saying this is the acknowledgement they've made. It's now, the language is now removed from the policy. I mean, you can deal with this however you want, but I'd suggest a practical approach. But do it however you want. No, and I appreciate the practical approach, but it doesn't tell us what they've done in the past. It tells us what they're representing to the court today, and we haven't gotten to that because we've not been allowed to do discovery. But I mean, we don't have a plaintiff that has had this problem. We do have a plaintiff that has this problem. Mr. Beck has left the company. He is subject to the policy I just read to the court. He has a liability to that company. In fact, let me just finish this very important point, if you don't mind, Judge. If Mr. Beck, who was the terminated employee, is allowed to testify in deposition, he will say eventually they recovered that from vacation pay. They didn't sue him for it. That's not in the record. It's not part of the record. This is a motion to dismiss. Is it in the complaint? It's in the complaint. Vacation pay? Judge, I can't represent to the court that at the time we filed the complaint that they had deducted that money. I can't represent that to the court. So you have a complaint without? We have a complaint that alleges that it's enforced against the plaintiffs and similarly situated employees. So you could try to seek to amend your complaint again to include that? We could do it. Paragraph 23 makes it pretty clear that they apply that policy to plaintiffs and similarly situated employees. And it's important for the court to make the distinction between the interpretive guides that have been referenced by counsel, especially 413 and 416. Those are interpretive guides. What Chevron requires, they require deference to publish regulations. And the publish regulation that should dictate the outcome of this case is 531.35, 29 CFR 531.35. Which says wage payments can only be considered wages paid if they're done unconditionally and free and clear. Thank you. Thank you very much, Your Honor. I appreciate it. We appreciate your argument. The case will be submitted. And would the clerk recess the court, please.